UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY BRINKLEY,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>MONTEREY FINANCIAL SERVICES, INC. *et al.*,<br><br>　　　　　　　Defendants. | Case No.: 16-CV-1103-WQH(WVG)<br><br>**ORDER GRANTING MOTION TO SUBSTITUTE PARTY**<br><br>**[Doc. No. 84.]** |

## I.　INTRODUCTION

Faced with Plaintiff's continued refusal to acknowledge the straightforward implications of California statute, Defendant Monterey Financial Services Inc. ("Old Monterey") has been forced to file a motion to substitute Defendant Monterey Financial Services LLC ("New Monterey") in Old Monterey's place in order to extricate itself from this case. Such extrication is necessary due to Plaintiff's continued insistence that Old Monterey—an entity that no longer exists by operation of California law—provide its own discovery responses. Plaintiff refuses to accept New Monterey's responses on behalf of Old Monterey and insists Old Monterey must provide its own responses that New Monterey has explained will be the same as its own responses to identical discovery. New Monterey has also explained in vain that Old Monterey no longer exists and is "essentially" a non-

entity that lacks assets, employees, or officers who could respond to discovery on its behalf. Plaintiff's dogged refusal to acknowledge *any* kernel of truth in this correct legal assessment has led to extensive meet-and-confer efforts over Old Monterey's purported failure to provide discovery responses, has required the parties to bring a discovery dispute to this Court, and has required briefing on the issue. Plaintiff's refusal also forced New Monterey to file the instant motion for substitution under Federal Rule of Civil Procedure 25(c). The Court finds ample basis to grant the substitution motion and directs that Old Monterey be terminated from the docket.

## II. BACKGROUND[1]

On October 15, 2013, Plaintiff initiated this action in state court against Old Monterey. New Monterey did not exist at that time.

On October 5, 2015, Old Monterey underwent a voluntary statutory conversion from a California corporation to a limited liability company. It did so by filing with the California Secretary of State the following form: Form LLC-1A entitled "Limited Liability Company Articles of Organization – Conversion." (Doc. No. 84-10 at 2.)[2] Thus, on October 5, 2015, the company's legal form officially changed to an LLC and its name

---

[1] Judge Hayes's Order denying Defendants' motion for sanctions thoroughly explained the background of this case, some of which the Court reiterates herein. (See Doc. No. 96.)

[2] New Monterey's request for judicial notice of Form LLC-1A, a public document filed with the California Secretary of State is GRANTED. *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Champion Courage Ltd. v. Fighter's Mkt., Inc.*, No. 17CV1855-AJB(BGS), 2018 U.S. Dist. LEXIS 69043, at *5-7 (S.D. Cal. Apr. 24, 2018). An identical copy of this form is available on the California Secretary of State's website. Available at https://businesssearch.sos.ca.gov/ (select "Corporation Name" radial button; type "Monterey Financial"; select "Search" button; select "Monterey Financial Services, Inc." hyperlink; select the PDF document hyperlink in the "CONVERSION" document type row).

Additionally, the Court *sua sponte* takes judicial notice of Old Monterey's current corporate status as "CONVERTED-OUT." *Id.*

changed from Monterey Financial Services Inc. to Monterey Financial Services LLC. As a result, as discussed below, Old Monterey dissolved by operation of California law, ceased to exist as a legal entity, all of its assets and liabilities transferred to New Monterey, and New Monterey stepped into its shoes for all purposes.

On April 1, 2016, Plaintiff amended the state complaint and added New Monterey as a defendant. Plaintiff did not drop Old Monterey from the state case, and it does not appear that Old Monterey sought to be removed from the case at that time. On May 6, 2016, Defendants removed the matter to this Court. Old Monterey remained in the case and was transferred to this Court's docket.

Earlier this year, the parties came to this Court with discovery disputes, which were stayed until the resolution of other pending motions. In those disputes, Plaintiff in part sought to compel Old Monterey's responses to various written discovery. (Doc. No. 81.) This written discovery is identical to those served upon New Monterey.[3] Plaintiff insists Old Monterey must respond to this discovery on its own behalf. New Monterey, however, contends Old Monterey cannot respond because it is a nonexistent entity and does not have any employees, representatives, or officers to respond. New Monterey contends Old Monterey's statutory conversion from a corporation to a limited liability company under the California Corporations Code imposes full liability for any judgment in this case upon New Monterey, and New Monterey's discovery responses are tantamount to being Old Monterey's responses. (Doc. No. 85.) Plaintiff refuses to accept any of this and insists Old Monterey must respond on its own behalf.

Old Monterey now moves for an order of substitution under Federal Rule of Civil Procedure 25(c), seeking to substitute out of this case. (Doc. No. 84; *see also* Doc. No. 93 (Plaintiff's opposition), 95 (Old Monterey's reply).) Old Monterey's desire to be terminated from this case is based in part upon Plaintiff's continued resistance to

---

[3] The Court compared the discovery propounded to New and Old Monterey and finds they indeed are identical. (See Exs. 2-7, Doc. No. 81-1 at 77-84.)

Defendants' correct arguments and Plaintiff's continued pursuit of discovery from Old Monterey, which have led to many meet and confer sessions and Court involvement.

### III. LEGAL STANDARD[4]

**A. California Corporations Code §§ 1150 *et seq.***

Enacted in 2002, sections 1150 *et seq.* provide California corporations a straightforward method by which to change their legal form. Stats 2002 ch 480 § 6 (SB 399). As is relevant here, a corporation seeking to become a limited liability company must complete a statement of conversion on the new entity's article of organization. § 1155(a)(3). The California Secretary of State has created and designated Form LLC-1A as the form corporations must file to do this. http://www.sos.ca.gov/business-programs/business-entities/conversion-information/ (listing different conversion certificates based on type of entity being converted) (last visited July 10, 2018). The filing of Form LLC-1A has several immediate and automatic consequences.

First, the corporation is immediately dissolved and the LLC springs forth in its place. § 1155(d) ("The filing with the Secretary of State of a statement of conversion on an organizational document or a certificate of conversion . . . shall have the effect of the filing of a certificate of dissolution by the converting corporation and no converting corporation that has made the filing is required to file" the certificates of dissolution otherwise required.). As a result of this automatic dissolution, "the corporate powers, rights, and privileges of the [converting] corporation shall cease." § 1905(b).

This statutory conversion also automatically causes the immediate transfer of all legal rights, assets, and liabilities to the newly-formed LLC. Specifically, the following vest or transfer to the LLC: all real and personal rights and property, § 1158(b)(1); all debts, liabilities, and obligations, § 1158(b)(2); and all rights and liens of creditors and lienholders, § 1158(b)(3).

---

[4] All references to "Rules" are to the Federal Rules of Civil Procedure. All statutory references are to the California Corporations Code.

Finally, "[a]n entity that converts into another entity . . . is for all purposes . . . the same entity that existed before the conversion." § 1158(a). That being said, although the corporation ceases to exist as a legal entity, "[a]ny action or proceeding pending . . . against the . . . converting corporation may be continued against the . . . converted corporation as if the conversion had not occurred." § 1158(c).

**B.    Rule 25(c) Substitution Following Transfers of Interest**

Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

Because substitution is a discretionary determination that facilitates conduct of the litigation, Rule 25(c) leaves the substitution decision to the Court's discretion. *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000); *see also Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71-72 (3d Cir. 1993) ("Because joinder or substitution under Rule 25(c) does not ordinarily alter the substantive rights of parties but is merely a procedural device designed to facilitate the conduct of a case, a Rule 25(c) decision is generally within the district court's discretion."). "The rule focuses on what was really going on in this case, and is designed to cope with that." *In re Bernal*, 207 F.3d at 598.

## IV.    DISCUSSION

What is going on in this case is unnecessary, aggressive litigation that will delay this case in the future—for no good reason. Old Monterey contends it should be terminated from this case because New Monterey is "effectively 'the same entity,'" as Old Monterey. (Doc. No. 84 at 7.) As a result, Old Monterey contends it does not have separate liability from New Monterey, which remains liable for all of Old Monterey's debts and liabilities. (*Id.*) However, Old Monterey actually understates the conversionary effect of sections 1150 *et seq.* New Monterey is not "effectively" the same entity as Old Monterey. As California law makes clear, it *is* the same entity. With exceptions that do not apply here, "[a]n entity that converts into another entity . . . *is for all purposes . . . the same* entity that existed before the conversion." § 1158(a) (emphasis added). California's conversion

statutes make clear not only that rights, property, debts and liabilities are automatically transferred to the new LLC, but also that the rights of creditors and all legal actions against the corporation continue unimpaired against the new LLC. New Monterey retains all of Old Monterey's real and personal rights and property. § 1158(b)(1). New Monterey remains liable for all of Old Monterey's debts, liabilities, and obligations. § 1158(b)(2). All of Old Monterey's creditors and lienholders retain all of their preexisting rights and liens, all of which remain enforceable against New Monterey with equal force as they were against Old Monterey. § 1158(b)(3). As a result of this this comprehensive and total conversion, New Monterey is indistinguishable from Old Monterey except in name only. Thus, New Monterey and Old Monterey are not *essentially* the same entity—they *are* the same entity in the eyes of the law.

Because Old Monterey's assets and property have been fully transferred to New Monterey, Plaintiff can recover any damages award from New Monterey directly. New Monterey explicitly admits as much: "Removing [Old Monterey] will not affect the liability in this case, as [Old Monterey's] liability vests in [New Monterey] by operation of law. Likewise, a substitution will not impact Plaintiff's recovery potential because [Old Monterey's] assets have vested in [New Monterey]." (Doc. No. 84 at 7.)[5] Thus, terminating Old Monterey from this case will have no impact upon Plaintiff's ability to collect any judgment in this case.

Moreover, since Old Monterey has morphed into New Monterey, New Monterey possesses all of the institutional knowledge, documents, and records to directly respond to any discovery. New Monterey acknowledges as much, stating that Old Monterey's responses—were it a going concern—would be the same responses New Monterey

---

[5] Additionally, New Monterey made the same representation to this Court on the record on November 4, 2016, stating: "The legal significance of [the statutory conversion] is clear, that it's simply a conversion from . . . a corporation to an LLC and that there's no real change in any other respect and that . . . LLC is . . . on the hook." (Ex. 3 to Orr Decl., Doc. No. 84-4 at 15.)

provided and will provide to the identical discovery propounded to it. (Doc. No. 85 at 3.) Thus, terminating Old Monterey from this case will have no impact on Plaintiff's ability to obtain discovery either.

Because New Monterey has stepped into the shoes of Old Monterey for all purposes, there is no reason for Old Monterey's continued presence in this case. New Monterey stands fully liable for Old Monterey's alleged conduct, and New Monterey stands ready to satisfy any judgment in this case. However, keeping Old Monterey in this case would only delay an already drawn-out litigation that has not even reached the class certification determination stage. The necessity of this very Order has been caused by Plaintiff's stubborn and unjustified insistence on keeping Old Monterey in this case. Plaintiff has engaged in time-consuming, expensive, and unnecessary litigation over the issue the Court resolves in this Order. Plaintiff has done so despite New Monterey's express concessions on the record and docket regarding it being "on the hook" for any ultimate damages and its representation that it would respond to discovery in the same manner Old Monterey would have responded.

Despite New Monterey's efforts to educate Plaintiff about California's conversion scheme, she has continued to demand responses to duplicative discovery from a defunct entity that has completely transferred itself to an ongoing concern that is already party to this case. Plaintiff has provided no good reason for her continued insistence that Old Monterey respond to discovery that has also been propounded to New Monterey in identical form. New Monterey's responses *are* Old Monterey's responses—they are one and the same entity for all purposes under the law. Indeed, Plaintiff's long-standing refusal to address or even acknowledge New Monterey's statutory argument is on full display in her opposition to the instant motion. She completely fails to address or even deign to acknowledge the substantive legal arguments New Monterey advances and does not mention any of the relevant statutes even once in her entire opposition brief. She behaved similarly during meet and confer efforts—as is evident from her counsel's letters—which forced New Monterey to file the instant motion. Indeed Plaintiff acknowledges she forced

Old Monterey to file the instant motion, seemingly boasting that Old Monterey did so "when it became obvious that Plaintiff's counsel was not going to back off insistence that [Old Monterey] respond to Plaintiff's discovery." (Doc. No. 93 at 8.) And therein lies the problem with keeping Old Monterey a named party to this case. Not "backing off" despite being presented with legally sound arguments will create additional unnecessary distractions and further delay this case. Thus, keeping Old Monterey in this case not only would serve no purpose given New Monterey is a defendant, it would also cause additional delay and expense going forward if Plaintiff persists in pursuing duplicative discovery from Old Monterey. The Court finds that granting Old Monterey's motion would most certainly facilitate the more efficient conduct of this case and would have no negative impact on the case or Plaintiff's ability to fully prosecute her claims.[6]

## V. CONCLUSION

The motion to substitute is GRANTED.[7] The Clerk of Court is directed to terminate Monterey Financial Services, Inc. as a party in this case as of the date of this Order.

**IT IS SO ORDERED.**

DATED: June 30, 2018

Hon. William V. Gallo
United States Magistrate Judge

---

[6] Plaintiff's contention that it needs discovery from Old Monterey is a red herring that is rooted in her refusal to acknowledge the effect of the conversion statutes. She asserts that "the net result of releasing [Old Monterey] from this case is to preclude Plaintiff from discovery what [Old Monterey], the only alleged 'bad actor' in this case, did, knows or possesses." (Doc. No. 93 at 7 (bold typeface omitted). However—again—New Monterey *is* Old Monterey—they are not separate entities. Discovery to Old Monterey serves no purpose given that it is duplicative of discovery propounded to New Monterey. Moreover, New Monterey has made clear that Old Monterey's responses would be identical to New Monterey's responses. Because New Monterey's discovery responses *are* Old Monterey's responses, Plaintiff will suffer no prejudice whatsoever from Old Monterey's termination from this case.

[7] On Order on the discovery disputes will issue separately.