1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY BRINKLEY, on behalf of herself and others similarly situated,<br><br>                                        Plaintiff,<br><br>v.<br><br>MONTEREY FINANCIAL SERVICES, LLC,<br><br>                                        Defendant. | Case No.:  16-cv-1103-WQH-WVG<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment filed by Defendant Monterey Financial Services, LLC. (ECF No. 129).

## I.   BACKGROUND

On October 15, 2013, Plaintiff Tiffany Brinkley, on behalf of herself and others similarly situated, filed a Class Action Complaint in the Superior Court for the State of California, County of San Diego, against Monterey Financial Services, Inc. ("Monterey, Inc."), and Does 1 through 100. (ECF No. 1-3). On May 6, 2016, Monterey, Inc., removed the action to this Court based on diversity jurisdiction pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. §§ 1441(a), 1332, and 1453. (ECF No. 1).

On February 28, 2018, Monterey, Inc., filed a Motion to Substitute Party, requesting the Court substitute Monterey Financial Services, LLC ("Monterey, LLC"), for Monterey, Inc. (ECF No. 84). On July 30, 2018, the Magistrate Judge issued an Order granting the Motion to Substitute Party and terminating Monterey, Inc. (ECF No. 104).

Brinkley amended the Class Action Complaint on May 17, 2018 (ECF No. 97), and December 10, 2018 (ECF No. 116). In the Second Amended Class Action Complaint ("SAC"), the operative pleading in this matter, Brinkley alleges that Defendant Monterey, LLC, unlawfully recorded telephone calls with California and Washington residents without the residents' knowledge or consent. Brinkley's individual claims are based on two calls that took place on February 14, 2013, and March 6, 2013. Brinkley seeks to represent the following class:

> All persons who, while residing in California and Washington, made or received one or more telephone calls with Defendant from October 15, 2009 through the date of trial (the "Class Period") and did not receive notice at the beginning of the telephone call that their telephone conversation may be recorded or monitored (the "Class").

(ECF No. 116 ¶ 18). Brinkley further seeks to represent the following subclass:

> All persons who made one or more telephone calls with Defendant while using a "cellular radio telephone" as such term is defined in Cal. Penal Code § 632.7(c)(1), during the Class Period and did not receive notice at the beginning of the telephone call that their telephone conversation may be recorded or monitored (the "Subclass").

(*Id.* ¶ 19). In the SAC, Brinkley brings claims on behalf of herself, the Class, and the Subclass against Monterey, LLC, for 1) invasion of privacy under section 632 of the California Penal Code and section 9.73.030(1)(a) of the Washington Revised Code; and 2) unlawful recording of telephone calls under section 632.7 of the California Penal Code. Brinkley seeks damages on behalf of herself, the Class, and the Subclass for each statutory violation and attorneys' fees, costs, and prejudgment interest.

On December 20, 2018, Monterey, LLC, filed a Motion to Dismiss Brinkley's claim for invasion of privacy under section 9.73.030(1)(a) of the Washington Revised Code.

(ECF No. 117). On May 6, 2019, the Court issued an Order granting Monterey, LLC's, Motion to Dismiss. (ECF No. 122). Brinkley is proceeding on the claims under California Law.

On September 3, 2019, Monterey, LLC, filed a Motion for Summary Judgment. (ECF No. 129). On September 30, 2019, Brinkley filed an Opposition to Monterey, LLC's, Motion for Summary Judgment. (ECF No. 133). On October 15, 2019, Monterey, LLC, filed a Reply. (ECF No. 134). On November 5, 2019, with leave of Court, Brinkley filed a Sur-Reply. (ECF No. 140).

The Court heard oral argument on Monterey, LLC's, Motion for Summary Judgment on December 13, 2019.

## II.   FACTS

In 2011, Brinkley "entered into a retail installment contract with Real Estate Investor Education ('REIE') for some educational courses, partially financed by Monterey Financial Services, Inc." (Separate Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("Def.'s Facts"), ECF No. 129-2 ¶ 3).[1] Monterey, Inc., converted to Monterey, LLC, in 2015. (*Id.* ¶ 1). "Monterey Financial Services, Inc. provided consumer financing, loan servicing and debt collection services, the same types of services subsequently provided by Monterey Financial Services, LLC." (*Id.* ¶ 2).

In 2012 and 2013, Monterey, Inc., recorded eight phone calls between Brinkley and Monterey, Inc., representatives. The calls took place on December 19, 2012 (*id.* ¶ 6);

---

[1] The Parties submitted evidentiary objections to the Separate Statements of Material Undisputed Facts. The Court will address specific objections to evidence it relied on in ruling on the Motion for Summary Judgment. *See San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 15cv1401 BEN (MDD), 2018 U.S. Dist. LEXIS 168284, at *15 (S.D. Cal. Sep. 28, 2018) ("[I]n motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." (quotation omitted)). If the Court does not explicitly address an objection, the Court does not rely on the underlying evidence, and the objection is overruled as moot.

January 25, 2013 (*id.* ¶ 10); January 28, 2013 (*id.* ¶ 14); February 11, 2013 (*id.* ¶ 18); February 14, 2013 (*id.* ¶ 22); February 26, 2013 (*id.* ¶ 25); February 27, 2013 (*id.* ¶ 29); and March 6, 2013 (*id.* ¶ 33). Brinkley challenges the legality of the February 14, 2013, and March 6, 2013, calls. (ECF No. 116 ¶ 10).

In the recording of the first call from Brinkley to Monterey, Inc., on December 19, 2012, an operator answers Brinkley's call and states, "Monterey Financial. How may I direct your call?" (Notice of Lodgment of Telephonic Recordings in Support of Defendant's Motion for Summary Judgment ("NOL"), Ex. 2, ECF No. 129-10 at 2). Brinkley asks to speak to a "customer service rep." (*Id.*). As the operator transfers Brinkley to a customer service representative, a disclosure plays that states, "Thank you for calling Monterey Financial. Your call may be monitored or recorded" (the "Disclosure"). (*Id.*). After a customer service representative answers the phone, a "beep tone" plays approximately every fifteen seconds. (*Id.*). Brinkley testified at her November 6, 2018, deposition regarding the December 19 call:

> Q. . . . I heard a notice that the call may be monitored or recorded. Did you hear that on the audio right now?
>
> A. Right now, yes.
>
> Q. Do you believe that was part of the call that happened on December 19, 2012?
>
> A. I don't recall hearing that.
>
> . . .
>
> Q. . . . Do you believe that it wasn't part of the call or you just don't remember hearing it?
>
> A. I don't believe it was part of the call.

(Deposition of Tiffany Brinkley ("Brinkley Dep."), Declaration of Patrick N. Keegan in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Keegan

16-cv-1103-WQH-WVG

Decl."), Ex. A, ECF No. 133-5 at 7:7-12, 8:3-5). Brinkley further testified that she did not recall hearing a "beep tone" on the December 19 call. (Plaintiff's Separate Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Facts"), ECF No. 133-1 ¶ 45; Brinkley Dep., Keegan Decl., Ex. A, ECF No. 133-5 at 9:8-20). Brinkley "does not recall hearing a 'beep tone' on any other phone calls she has had." (Pl.'s Facts, ECF No. 133-1 ¶ 46).

> Brinkley stated at her deposition:
>
> Q. Do you have any idea, as you sit here – at the time in 2012, what would your thought have been if you heard a phone call that had a beep tone playing, an audible beep tone every 15 seconds?
>
> . . .
>
> A. That the phone was dying, somebody's phone was dying. That tone that you usually hear.
>
> . . .
>
> Q. And had you in 2012 never heard of the concept that a beep tone is an indicator that a call was being monitored or recorded?
>
> A. Not from where I'm used to, no, I usually hear it. Somebody usually says something to you.

(Brinkley Dep., Keegan Decl., Ex. A, ECF No. 133-5 at 10:14-24, 11:8-12).

In the recordings of the calls from Brinkley to Monterey, Inc., on January 25, 2013, January 28, 2013, February 11, 2013, February 26, 2013, and February 27, 2013, the Disclosure plays as the operator transfers Brinkley to account or customer service representative. (NOL, Ex. 3 ECF No. 129-10 at 3; NOL, Ex. 4 ECF No. 129-10 at 4; NOL, Ex. 5, ECF No. 129-10 at 5; NOL, Ex. 7, ECF No. 129-10 at 7; NOL, Ex. 8, ECF No. 129-10 at 8). After a representative answers the phone, a "beep tone" plays approximately every fifteen seconds. The "beep tone" stops when Brinkley is placed on hold. After Brinkley is taken off hold, the "beep tone" resumes. (NOL, Ex. 3 ECF No. 129-10 at 3; NOL, Ex. 4

16-cv-1103-WQH-WVG

ECF No. 129-10 at 4; NOL, Ex. 7, ECF No. 129-10 at 7). The "beep tone" does not play while Brinkley is listening to a voicemail greeting or leaving a message. (NOL, Ex. 8, ECF No. 129-10 at 8).

Brinkley testified at her deposition that she does not recall hearing the Disclosure on any of the calls on January 25, January 28, February 11, February 26, or February 27. (Brinkley Dep., Keegan Decl., Ex. A, ECF No. 133-5 at 14:9-17, 16:8-18, 17:20-18:3, 23:11-14, 23:22-24:1, 24:9-13, 25:11-25, 28:1-24). Brinkley stated:

> Q. On the second call the same thing, we just heard the announcement on the second phone call, and do you believe that that announcement was provided during the second phone call we were just listening to?
>
> A. I don't believe so. I don't recall that announcement being made in any phone call.
>
> Q. In any phone call with Monterey?
>
> A. Correct.

(*Id.* at 14:9-17). Brinkley further testified at her deposition that she does not recall hearing a "beep tone" on any of the calls on January 25, January 28, February 11, February 26, or February 27. (Pl.'s Facts, ECF No. 133-1 ¶ 46; Brinkley Dep., Keegan Decl., Ex. A, ECF No. 133-5 at 15:17-24, 16:8-18, 23:11-14, 23:22-24:1, 24:9-13, 25:11-25, 28:1-24).

The Disclosure did not play during either of the challenged calls on February 14, 2013, or March 6, 2013. (Pl.'s Facts, ECF No. 133-1 ¶¶ 64, 74). On February 14, 2013, a Finance Supervisor at Monterey, Kelly Burke, made an outgoing call to Brinkley. (Pl.'s Facts, ECF No. 133-1 ¶ 62; Brinkley Dep., Keegan Decl., Ex. A, ECF No. 133-5 at 19:2-5). During the call, Burke told Brinkley that Monterey, Inc., received a letter from Brinkley's lawyer, and Brinkley and Burke discussed Brinkley's contract with REIE and Monterey, Inc.'s, services. (NOL, Ex. 6, ECF No. 129-10 at 6). In the recording of the February 14 call, a "beep tone" plays approximately every fifteen seconds. (*Id.*). "Brinkley

1  does not recall hearing a 'beep tone' on the February 14, 2013 call." (Pl.'s Facts, ECF No.
2  133-1 ¶ 67).

3     "On March 6, 2013, Brinkley called Monterey using her cell phone and spoke to
4  Kelly Burke." (*Id.* ¶ 72.). When the operator answers Brinkley's call, Brinkley states, "I
5  need to speak with Kelly Burke, please." (NOL, Ex. 9, ECF No. 129-10 at 9). After the
6  operator transfers Brinkley to Burke's direct line, and Burke answers, a "beep tone" plays
7  approximately every fifteen seconds. (*Id.*). During the March 6 call, Burke told Brinkley
8  that she believed Brinkley no longer wanted to correspond with Burke and transferred
9  Brinkley to Burke's supervisor, Finance Manager Jeff Smith, to leave a voicemail message.
10 (*Id.*). The "beep tone" does not play while Brinkley is on hold or while Brinkley is listening
11 to the voicemail greeting or leaving a message. (*Id.*). "Brinkley does not recall hearing a
12 'beep tone' on the March 6, 2013 call." (Pl.'s Facts, ECF No. 133-1 ¶ 75).

13 **III.   LEGAL STANDARD**

14    "A party may move for summary judgment, identifying each claim or defense—or
15 the part of each claim or defense—on which summary judgment is sought. The court shall
16 grant summary judgment if the movant shows that there is no genuine dispute as to any
17 material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
18 56(a). A material fact is one that is relevant to an element of a claim or defense and whose
19 existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v.*
20 *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined
21 by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*,
22 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

23    The moving party has the initial burden of demonstrating that summary judgment is
24 proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving
25 for summary judgment does not bear the burden of proof at trial, "the burden on the moving
26 party may be discharged by 'showing'—that is, pointing out to the district court—that there
27 is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at
28 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th

Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim." (citations omitted)).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256.

## IV. CONFIDENTIAL COMMUNICATIONS

Monterey, LLC (hereinafter, "Monterey"), contends that the Court should grant summary judgment in its favor on Brinkley's first cause of action for violation of section 632 of the California Penal Code. Monterey contends that neither the February 14 nor the March 6 call was a "confidential communication" as defined by section 632. Monterey contends that Brinkley did not have an objectively reasonable expectation the February 14 or March 6 calls would not be monitored or recorded because Brinkley was provided with a "beep-tone notice of recording," and the Disclosure on other calls provided notice that the challenged calls were being monitored or recorded. (MSJ, ECF No. 129-1 at 11). Monterey further contends that "consumer calls to a customer care center to discuss a

8

billing issue do not support an expectation of privacy sufficient to qualify such calls as a confidential communication under section 632." (*Id.*).

Brinkley contends that there is a triable issue of fact as to whether the challenged calls were "confidential communication[s]" under section 632. Brinkley contends that the presence of a "beep tone" on the recordings of the calls is not sufficient for the Court to grant summary judgment. Brinkley contends that a "beep tone" must be audible to all parties to a communication to provide sufficient notice of recording. Brinkley contends that the Disclosure given on some calls with Monterey did not provide notice that calls where no Disclosure was given would be recorded.

Section 632(a) of the California Penal Code, part of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630 *et seq.*, provides in relevant part, "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication" violates the statute. A "confidential communication" is:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Cal. Pen. Code § 632(c). "[A] conversation is confidential if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002) (citing *Frio v. Sup. Ct.*, 203 Cal. App. 3d 1480 (1988), and *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923 (1994)).

"The issue whether there exists a reasonable expectation that no one is secretly recording or listening to a phone conversation is generally a question of fact." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011); *see Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 169 (2003) ("It is for the jury to decide whether under the circumstance presented [the plaintiff] could have *reasonably* expected that the

communications were private." (emphasis in original)). This factual inquiry depends on several factors

> such as whether the call was initiated by the consumer or whether a corporate employee telephoned a customer, the length of the customer-business relationship, the customer's prior experiences with business communications, and the nature and timing of any recorded disclosures.

*Kight*, 200 Cal. App. 4th at 1396; *see Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1020 (9th Cir. 2013) ("In the context of a business-related telephone call, courts have looked to the circumstances surrounding the call to divine whether the standard has been met, including the 'nature of [the defendant's] business and the character of the communications.'" (quoting *Flanagan*, 27 Cal. 4th at 772) (alteration in original)).

In *Kight*, defendant CashCall moved for summary judgment on the plaintiff's claim under section 632. CashCall contended that the plaintiffs' recorded telephone conversations with CashCall were not "confidential communication[s]," in part because "plaintiffs were advised at the outset of the borrower/lender relationship of CashCall's intent to monitor the telephone calls." 200 Cal. App. 4th 1396. The court determined that summary judgment in CashCall's favor was not appropriate. The court explained:

> [A]ssuming . . . each plaintiff heard the warning message "*at the outset*" of his or her "*borrower/lender relationship*" with CashCall, this fact does not establish as a matter of law plaintiffs were adequately warned that subsequent calls would be monitored . . . CashCall's recorded call monitoring disclosure stated: "*This* call may be monitored or recorded for quality control purposes," which would not necessarily inform a borrower that this call *and all future calls* with CashCall may be monitored or recorded.

*Id.* at 1399 (emphasis in original). The court further explained that "CashCall did not provided monitored warnings on any of its 322 outbound calls to class members," and "there were various ways in which a caller could speak with a CashCall employee without hearing [the] message—including by . . . pressing . . . an employee's direct extension." *Id.* The court found that this evidence "raises factual issues as to whether all inbound callers received the message." *Id.*

In this case, it is undisputed that Brinkley was not given the Disclosure that her call would be monitored or recorded during the February 14 or March 6 calls. (Pl.'s Facts, ECF No. 133-1 ¶¶ 64, 74). However, the Disclosure is audible on the recordings of six other calls Brinkley made to Monterey as Brinkley is transferred to a customer service or account representative. (NOL, Ex. 3 ECF No. 129-10 at 3; NOL, Ex. 4 ECF No. 129-10 at 4; NOL, Ex. 5, ECF No. 129-10 at 5; NOL, Ex. 7, ECF No. 129-10 at 7; NOL, Ex. 8, ECF No. 129-10 at 8). Four calls where the Disclosure was given took place before the February 14 call, and two calls where the Disclosure was given took place between the February 14 and March 6 calls. Brinkley was given notice six times, as she was transferred to a customer service or account representative, that her "call may be monitored or recorded." (NOL, Ex. 2, ECF No. 129-10 at 2). In addition, a "beep tone" is audible approximately every fifteen seconds on the recordings of all calls between Brinkley and Monterey. (NOL, Ex. 3 ECF No. 129-10 at 3; NOL, Ex. 4 ECF No. 129-10 at 4; NOL, Ex. 5, ECF No. 129-10 at 5; NOL, Ex. 6, ECF No. 129-10 at 6; NOL, Ex. 7, ECF No. 129-10 at 7; NOL, Ex. 8, ECF No. 129-10 at 8; NOL, Ex. 9, ECF No. 129-10 at 9). Brinkley's experience with Monterey prior to the February 14 and March 6 calls may weigh in favor of a determination that Brinkley was warned that Monterey would monitor or record Brinkley's calls when she calls in to a customer service or account representative.

However, the February 14 and March 6 calls are distinguishable from Brinkley's six calls with Monterey where Brinkley was given the Disclosure before speaking to a customer service or account representative. The February 14 call was an outgoing call from Kelly Burke, a Finance Supervisor, to Brinkley. Burke told Brinkley that Monterey received a letter from Brinkley's lawyer, and Burke and Brinkley discussed the contract with REIE. (NOL, Ex. 6, ECF No. 129-10 at 6). The March 6 call was initiated by Brinkley, and Brinkley requested a transfer to Kelly Burke's direct line. By contrast, in the other six calls, Brinkley initiated the calls and spoke to general customer service or account representatives. *See Kight*, 200 Cal. App. 4th at 1396 (explaining that a corporate employee telephoning a customer weighs in favor of a determination that the customer had a

11

reasonable expectation of privacy). The Disclosure on Brinkley's calls to a Monterey customer service or account representative "may not necessarily inform [Brinkley]" that outbound calls from a Finance Supervisor, or inbound calls to the Finance Supervisor's direct line, would be monitored or recorded. *Id.* at 1399. The circumstances surrounding the February 14 and March 6 calls—where Monterey's Finance Supervisor initiated the February 14 call, Brinkley requested a transfer to the Finance Supervisor's direct line in the March 6 call, and Brinkley did not receive a Disclosure on either call—raise factual issues for a trier of fact to consider in determining whether Brinkley had a reasonable expectation the February 14 and March 6 calls were not being monitored or recorded.

Monterey cites an empirical survey in support of its contention that a reasonable person would not expect that that the February 14 or March 6 calls were confidential. The empirical survey shows:

> 82 percent of the survey participants expect that phone calls they receive from a financial institution of which they are a customer are monitored or recorded for quality assurance purposes, whereas 83 percent expect that phone calls they make to a financial institution are monitored or recorded for quality assurance purposes . . . Also, a similar percentage expects that, after being told by the financial institution that a call may be monitored or recorded, their subsequent calls may also be monitored or recorded.

(ECF No. 129-1 at 12 (citing Declaration of Robert A. Peterson, Ph.D., in Support of Monterey's Motion for Summary Judgment, ECF No. 129-6)). Brinkley objects to the survey, contending that it "should be excluded as inherently unreliable" pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). (ECF No. 133 at 19). The Parties have not briefed the *Daubert* issue, other than cursorily in their summary judgment arguments, and the Court declines to resolve the expert admissibility on the record before it. Even if the Court considers the survey, the survey does not show that Brinkley's February 14 and March 6 calls, which are distinguishable from general calls to a customer care center, are not confidential as a matter of law.

Monterey fails to meet its burden to show that the February 14 and March 6 calls were not confidential as a matter of law. The Court finds that there is an issue of material fact as to whether Brinkley had an objectively reasonable expectation that the February 14 and March 6 calls were not being overheard or recorded. Monterey is not entitled to summary judgment on Brinkley's first cause of action based on the contention that Brinkley's communications with Monterey on February 14 and March 6 were not "confidential communications" under section 632.

## V.   CONSENT

Monterey contends that the Court should grant summary judgment in its favor on Brinkley's first and second causes of action for violations of sections 632 and 632.7 of the California Penal Code because Brinkley consented to being recorded on the February 14 and March 6 calls by continuing to participate after she was put on notice the calls were being monitored or recorded.

Brinkley contends that there is a triable issue of fact as to whether she consented to being recorded during the February 14 and March 6 calls because the 'beep tone' was inaudible to her.

To establish a violation of section 632(a), the plaintiff must show that a defendant eavesdropped on or recorded a confidential communication "without the consent of all parties" to the communication. Cal. Pen. Code § 632(a). Section 632.7 similarly provides that "[e]very person who, *without the consent of all parties to a communication*, intercepts or receives and intentionally records . . . a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone" violates the statute.[2] Cal. Pen. Code. § 632.7(a) (emphasis added). These sections

prohibit[ ] [ ] a party from . . . recording the conversation without first

---

[2] Section 632.7 does not require that a communication is "confidential."

1
2
3
4
5

> informing all parties to the conversation that the conversation is being recorded. If, after being so advised, another party does not wish to participate in the conversation, he or she simply may decline to continue the communication. A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the provision.

6     *Kearney*, 39 Cal. 4th 95, 118 (2006).

7          The Disclosure was not given on the February 14 or March 6 calls, and these
8     challenged calls are distinguishable from the other calls Brinkley had with Monterey.
9     Viewing the facts in the light most favorable to Brinkley, the Court cannot determine that
10    Monterey provided sufficient notice that the February 14 outgoing call to Brinkley, or the
11    March 6 call where Brinkley was transferred directly to Kelly Burke, would be monitored
12    or recorded. Monterey fails to meet its burden to show that Brinkley did not consent to the
13    recording of the February 14 and March 6 calls as a matter of law. Monterey is not entitled
14    to summary judgment on Brinkley's first or second causes of action based on the contention
15    that Brinkley consented to the recordings.

16    **VI.   SERVICE OBSERVING**

17          Monterey contends the Court should grant summary judgment in its favor on
18    Brinkley's first and second causes of action because "[i]t is beyond dispute that Monterey
19    records calls for service-observing purposes . . . [and] neither section 632 nor section 632.7
20    were ever intended to apply to recording of calls for service-observing purposes . . . ." (ECF
21    No. 129-1 at 13). Monterey contends that recording calls for routine "service observing"
22    falls within the statutory exception to sections 632 and 632.7 for using instruments,
23    equipment, facilities, or services furnished and used pursuant to a tariff of a public utility
24    (the "tariffs exception"). Monterey contends that the tariffs exception is latently ambiguous
25    because the telecommunications industry has evolved so that business need not purchase
26    recording equipment from their carriers or use the equipment pursuant to a tariff. Monterey
27    contends that the legislative history establishes that service observing by businesses was
28    intended to be included in the tariffs exception.

Brinkley contends that neither section 632 nor 632.7 provides a "service-observing exception." Brinkley contends that the statutory exceptions are unambiguous, and Monterey does not meet the requirements for any statutory exception from liability. Brinkley contends that the Court need not review the legislative history because the California Supreme Court has already rejected the proposition that section 632 or 632.7 creates a "service-observing exception."

In construing a state statute, federal courts apply state laws of statutory construction. *Bass v. Cty. of Butte*, 458 F.3d 978, 981 (9th Cir. 2006). Under California law:

> [a court's] role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. The words, however, must be read in context, considering the nature and purpose of the statutory scheme.

*Hunt v. Sup. Ct.*, 21 Cal. 4th 984, 1000 (1999) (internal citations omitted). "Only when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning. *Diamond Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal. 4th 1036, 1055 (1999); *see Kaufman & Broad Cmtys, Inc. v. Performance Plastering, Inc.*, 133 Cal. App. 4th 26, 29-30 (2005) ("[R]esort to the legislative history is appropriate only where the statutory language is ambiguous.").

A statute's language is facially ambiguous where it is "susceptible to more than one reasonable interpretation." *Hoechst Celanese Corp. v. Franchise Tax Bd.*, 25 Cal. 4th 508, 519 (2001). Even if a statute's language is facially unambiguous, a latent ambiguity may exist where a literal construction of the statute would frustrate rather than promote the purpose of the statute or where a literal construction of the statute would produce absurd consequences. *Coburn v. Sievert*, 133 Cal. App. 4th 1483, 1495 (2005) (citing *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.*, 7 Cal. 4th 561, 567 (1994), and

*McCormick v. Bd. of Supervisors*, 198 Cal. App. 3d 352, 357-58 (1988)). "When a court reviews extrinsic material to determine whether a latent ambiguity exists, it must be careful not to rewrite an unambiguous statute by inserting qualifying language." *Coburn*, 133 Cal. App. 4th at 1495. A court "should not create a latent ambiguity where none exists." *Id.* at 1495-96.

The tariffs exception states that the prohibitions against recording or eavesdropping in sections 632 and 632.7 shall not apply to "the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility." Cal. Pen. Code §§ 632(e)(2), 632.7(b)(2). Section 630 of the California Penal Code provides a "declaration of policy" by the legislature in enacting CIPA. Section 630 states:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.
>
> The Legislature by this chapter intends to protect the right of privacy of the people of this state.
>
> The Legislature recognizes that law enforcement agencies have a legitimate need to employ modern listening devices and techniques in the investigation of criminal conduct and the apprehension of lawbreakers. Therefore, it is not the intent of the Legislature to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of this chapter.

On its face, the language of the tariffs exception is unambiguous. The exception does not apply unless the recording equipment is "furnished and used pursuant to the tariffs of a public utility." *See Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1007 (C.D. Cal. 2014) (holding the tariffs exception "is plain and unambiguous"); *see also Ribas v. Clark*, 38 Cal. 3d 355, 362 (1985) (denying demurrer where there was no applicable tariff at time of the alleged recording). As section 630 shows, the "nature and purpose" of CIPA's

statutory scheme is to protect the privacy rights of the people. *Hunt*, 21 Cal. 4th at 1000. Construing the public utility tariffs exception literally would not frustrate this purpose. Construing the exception as Monterey urges—to read into the statute a broad exception for all business monitoring—would frustrate the purpose of the statute. The Court finds that there is no latent ambiguity, and the plain language of the statute governs. The Court need not resort to examining the legislative history.[3] *Diamond Multimedia Sys., Inc.*, 19 Cal. 4th at 1055.

The Court's conclusion is consistent with other courts in this circuit and California state law. *See Gamez v. Hilton Grand Vacations Inc.*, 2:18-CV-04803 GW (JPRx), 2018 U.S. Dist. LEXIS 225333, at *2 (C.D. Cal. Oct. 22, 2018) ("There is nothing about any service-observing exception present in the plain language of Section 632.7. To reach its conclusion that such an exception exists, Defendant proceeds down a roundabout path through decades-old legislative history (of a different enactment) and the tariff practices and history of public utilities. As other courts have concluded, the Court sees no proper basis for following that path here . . . . The Court is quite confident that if the California legislature actually intended such an exception to exist in the statute, it could enact it easily, and clearly."); *Ades*, 46 F. Supp. 3d at 1008 (finding that section 632 is unambiguous and does not contain a broad exception for routine service monitoring); *Bales v. Sierra Trading Post*, No. 13cv1894, 2013 U.S. Dist. LEXIS 170443, 2013 WL 6244529, at *4 (S.D. Cal. Dec. 3, 2013) (declining to read a "service observing" exception into section 632 that would permit secret recording for quality assurance purposes); *Dake v. Receivables*

---

[3] Monterey requests the Court take judicial notice of portions of the legislative history of section 632, Assembly Bill No. 860 (1967 Reg. Sess.). (Request for Judicial Notice, ECF No. 129-7). The Court has determined that it need not examine the legislative history of section 632 or 632.7. Accordingly, judicial notice of the requested documents is unnecessary for this Order. *See Asvesta v. Petroustas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary"); *Knell v. FIA Card Servs., N.A.*, No. 12-cv-0426-AJB (WVG), 2013 U.S. Dist. LEXIS 187551, at *21 (S.D. Cal. Feb. 21, 2013) (declining to take judicial notice of legislative history of section 632). Monterey's request for judicial notice is denied.

1   *Performance Mgmt., LLC.*, No. 12-cv-01680, 2013 U.S. Dist. LEXIS 160341, at *13 (C.D.
2   Cal. Apr. 16, 2013) (finding sections 632 and 632.7 are unambiguous and neither contains
3   a "service observing" exception); *Knell v. FIA Card Servs., N.A.*, No. 12-cv-0426-AJB
4   (WVG), 2013 U.S. Dist. LEXIS 187551, at *23 (S.D. Cal. Feb. 21, 2013) ("Section 632
5   does not create a 'service-observing' exemption in its unambiguous provisions and, thus,
6   the Court declines to create one based upon the statute's legislative history."); *Zephyr v.
7   Saxon Mortg. Serv.'s, Inc*., 873 F. Supp. 2d 1223, 1231 (E.D. Cal. 2012) (explaining that a
8   "business telephone monitoring" exception would be contrary to the express language of
9   sections 632 and 632.7); *see also Kight*, 200 Cal. App. 4th at 1391 (holding that section
10  632 "contains no exceptions applicable when a business monitors a telephone conversation
11  even if the monitoring is for a legitimate business purpose").

12      The Court's conclusion is further consistent with the Supreme Court of California's
13  application of section 632 to an out-of-state business that recorded calls with customers in
14  California. *Kearney*, 39 Cal. 4th at 126. The court explained in *Kearney*, "If businesses
15  could maintain a regular practice of secretly recording all telephone conversations with
16  their California clients . . . that practice would represent a significant inroad into the privacy
17  interest that the statute was intended to protect." *Id.*; *see Zephyr*, 873 F. Supp. 2d at 1231
18  (explaining that "[i]f there was any doubt about whether the statute clearly and
19  unambiguously covered [service-recording calls], the *Kearney* decision dispelled it"). As
20  the California Supreme Court noted, "California law does not totally prohibit a party to a
21  telephone call from recording the call, but rather prohibits only the *secret* or *undisclosed*
22  recording of telephone conversations." *Kearney*, 39 Cal. 4th at 127 (emphasis in original).

23      The Court finds that sections 632 and 632.7 do not contain a "service-observing
24  exception." Monterey had failed to provide evidence that its conduct falls within the
25  statutory tariffs exception. *See United States v. Guzman-Mata*, 579 F.3d 1065, 1073 (9th
26  Cir. 2007) (establishing that "a defendant who relies upon an exception to a statute . . . has
27  the burden of establishing and showing that he comes within the exception."). Monterey is
28  not entitled to summary judgment based on an exception to section 632 or 632.7.

## VII.  STATUTORY DAMAGES

Monterey contends that the Court should grant partial summary judgment in Monterey's favor on Brinkley's request for statutory damages of $5,000 "per violation." (ECF No. 129-1 at 16). Monterey contends that the January 1, 2017, amendment adding the "per violation" language to section 637.2 establishes that, prior to 2017, CIPA allowed recovery only per action. Monterey contends that Brinkley's claims arise from calls that occurred before the statutory amendment, so Brinkley is limited to recovery of $5,000 in statutory damages.

Brinkley contends she is entitled to $5,000 per violation of sections 632 and 632.7. Brinkley contends that courts have already rejected Monterey's argument that a CIPA plaintiff is entitled only to $5,000 per action. Brinkley contends that Monterey has no support for a proposition that there is a $5,000 class-wide cap on recovery.

Prior to 2017, section 637.2 of the California Penal Code provided:

 **(a)** Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:

**(1)** Five thousand dollars ($5,000).

**(2)** Three times the amount of actual damages, if any, sustained by the plaintiff.

Cal. Pen. Code § 637.2 (2016). As of January 1, 2017, section 637.2 now provides:

**(a)** Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:

**(1)** Five thousand dollars ($5,000) *per violation*.

**(2)** Three times the amount of actual damages, if any, sustained by the plaintiff.

Cal. Pen. Code § 637.2 (2017) (emphasis added).

In construing a state statute, federal courts apply state laws of statutory construction. *Bass*, 458 F.3d at 981. The federal court must "determine what meaning the state's highest court would give the law." *Id.* at 981-82. The Court first reviews the plain language of the statute, then, if the plain language is ambiguous, turns to extrinsic aids like the legislative history. *Hunt*, 21 Cal. 4th at 1000. In the case of a statutory amendment, "an intention to change the law is usually inferred from a material change in the language of the statute, [but] a consideration of the surrounding circumstances may indicate . . . that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute." *Martin v. Cal. Mut. Bldg. & Loan Ass'n*, 18 Cal. 2d 478, 484 (1941) (citations omitted).

The California Supreme Court has not explicitly addressed the issue of whether the pre-2017 version of section 637.2 provides for damages per violation or per action. In *Flanagan*, the California Supreme Court reviewed the decision of the Court of Appeal that only two of twenty-seven telephone calls were confidential under section 632. 27 Cal. 4th at 776. At trial, the jury found that twenty-four calls were confidential and awarded the plaintiff $5,000 *for each call*, totaling $120,000. *Id.* at 771. The defendant filed a motion for new trial or judgment notwithstanding the verdict, and the trial court limited the plaintiff's damages to $5,000 *total*. *Id.* On appeal, the Court of Appeal "rejected both the trial court's reasoning that constitutional principles limited damages to $5,000, and [the defendant's] contention that the statute should be construed to provide a single $5,000 award per victim irrespective of the number of recorded conversations" and awarded $5,000 for each of two conversations it determined were confidential, for a total of $10,000. *Id.* at 771-72. On appeal to the California Supreme Court, the court reviewed only the interpretation of "confidential communication," and it reversed and remanded the case. *Id.* at 772, 777. The court did not review the amount of damages. On remand, in an unpublished decision, the Court of Appeal found that the defendant recorded twenty-four confidential communications and upheld the jury award of $5,000 *per violation*. *Flanagan v. Flanagan*, B122810, 2002 Cal. App. Unpub. LEXIS 5663, at *10-11 (Ct. App., Jun. 24, 2002); *see also Ribas*, 38 Cal. 3d at 365 (1985) (reviewing only one recorded call, but stating that

section 637.2 "authorizes civil awards of $3,000[4] for *each violation* of the Privacy act despite the party's inability to prove actual injury" (emphasis added)); *Coulter*, 28 Cal. App. 4th at 928 ("Section 637.2 provides a private cause of action for any person injured by a violation of the Privacy Act with statutorily prescribed damages of $3,000 *per violation*." (emphasis added)); *Lieberman*, 110 Cal. App. 4th at 167 ("[T]o recover statutory damages for violation of section 632, [the plaintiff] . . . may recover up to $5,000 for *each incident*." (emphasis added)). Monterey does not cite any California state court case in which the court held that a plaintiff may only recover statutory penalties of $5,000 per action.

Courts in this circuit are split on whether the pre-2017 version of CIPA allows for recovery of $5,000 per violation or per action. In *Ronquillo-Griffin v. TELUS Commc'ns, Inc.*, No. 17cv129 JM (BLM), 2017 WL 2779329 (S.D. Cal. Jun. 27, 2017), three named plaintiffs brought individual claims as well as class claims, based on one recorded phone call to each named plaintiff in violation of section 637.2. 2017 WL 2779329, at *1. The court held that the pre-2017 version of CIPA allowed plaintiffs to seek statutory penalties of $5,000 per violation and that "the amendment clarified, rather than changed, the true meaning of section 637.2." *Id.* at *6. The court first analyzed the text of the pre-amendment section 637.2 and determined that the text is ambiguous. *Id.* The court explained that the emphasis could be on the "action"—a person may bring "an action . . . for . . . [f]ive thousand dollars ($5,000)"—or on the "violation"—a person injured by "*a* violation" may bring an action against the person who committed "*the* violation" for $5,000. *Id.* (quoting Cal. Pen. Code § 637.2(a)) (emphasis added). The court then analyzed the legislative history of the amendment (Assembly Bill 1671) that added the "per violation" language to section 637.2 and "per violation" language to section 632(a) regarding criminal fines. *Id.* at *7. The court stated:

---

[4] Prior to the 1992 amendment, section 637.2(a)(1) provided for recovery of "[t]hree thousand dollars ($3000)."

The Legislative Counsel's Digest associated with A.B. 1671 makes clear that the amendment had [the purposes] . . . to "provide that monetary damages be imposed per violation of the above-described provisions;" and [ ] to "require that the above-specified fines be imposed on a per-violation basis . . . . See 2016 Cal. Legis. Serv. Ch. 855 (A.B. 1671) (West) . . . . With respect to the [ ] goal [ ] to ensure that fines under section 632(a) . . . be imposed on a per violation basis—it was noted on more than one occasion that the bill "[c]larifies that the prohibition on recording a confidential communication applies to each violation." *Id.* (emphasis added) . . . . [It] also "clarifies that the penalties will be applied for each violation of the offense." Cal. Bill Analysis, A.B. 671 Sen. Comm. Pub. Safety, (June 28, 2016) (emphasis added); see also Cal. Bill Analysis, A.B. 1671 Assem. Comm. Appropriations (May 4, 2016) ("[T]his bill . . . [c]larifies that the fines for the crimes of illegal recording of a confidential communication and the use or disclosure of illegally recorded communications apply per violation." (emphasis added)).

Unfortunately, the available legislative history is silent as to whether A.B. 1671 also served to clarify, or in fact change, whether statutory damages applied per violation. But it is noteworthy that despite the repeated observation that the amendment simply "clarifie[d]" that fines were to be imposed per violation, the phrase "per violation" was nowhere to be found in section 632(a) (regarding fines), just as it was not found in section 637.2 (regarding damages). See 2016 Cal. Legis. Serv. Ch. 855 (A.B. 1671) (West). In other words, neither section had the phrase before the amendment, both had the phrase after the amendment, and the only discussion of the phrase consistently indicated that it served as a clarifying purpose. Thus, it is only logical to conclude that if the phrase was clarifying with respect to section 632(a), it was clarifying with respect to section 637.2, as well.

To embrace the alternate view, one would have to believe that the identical additions of the words "per violation," included in the same amendment, were intended to have completely conflicting effects in related Penal Code sections.

*Id.* at *7-8. The Court further explained that the conclusion that the 2017 amendment clarified section 637.2 "conforms to California case law approving, albeit in a cursory manner, the recovery of damages for each violation of the Privacy Act." *Id.* at *8.

In *Franklin v. Ocwen Loan Servicing, LLC*, No. 18-cv-03333-SI, 2018 WL 5923450 (N.D. Cal. Nov. 13, 2018), the plaintiff brought individual and class claims for violations of section 632.7, seeking statutory damages of $5,000 per violation for calls made between

2011 and 2015. 2018 WL 5923450, at *1. The court granted the defendant's motion to dismiss on the grounds that the plaintiff could not seek statutory damages on a per violation basis. *Id.* at *7. The court "disagree[d] with the logic in *Roniquillo-Griffin*." *Id.* at *5. The court first determined that "the text of § 637.2(a) before 2017 was unambiguous and [ ] it would be improper to read 'per violation' into the statute where the legislature did not include it." *Id.* at *6; *see Lal v. Capital One Fin. Corp.*, No. 16-cv-06674-BLF, 2017 WL 1345636, at *5 (N.D. Cal. Apr. 12, 2017) (holding the plain language of section 637.2 is unambiguous and explicitly provided damages "per action"); *Ramos v. Capital One, N.A.*, No. 17-cv-00435-BLF, 2017 WL 3232488 (N.D. Cal. Jul. 27, 2017) (same). The court stated:

> At its core, the statute reads: "Any person . . . may bring an action . . . for the greater of the following amounts: (1) Five thousand dollars ($5,000). (2) Three times the amount of actual damages . . . ." This construction can permit only one interpretation: that the statute before 2017 did not allow damages on a per violation basis.

*Franklin*, 2018 WL 5923450, at *6. The court determined that this conclusion was supported by the legislative history. The court reasoned that only language in the legislative history regarding "clarification" pertained to criminal penalties under section 632, not damages under section 637.2. The court stated that it "declines to find that the legislature intended a clarification to § 637.2 in the absence of any language anywhere in the legislative history to that effect." *Id.*; *see Lal*, 2017 WL 1345636, at *7 (explaining that the Legislative Counsel's Digest relevant to A.B. 1671 that states "this bill would provide that the monetary damages be imposed per violation" "shows that the legislators intended to amendment the code section to impose monetary damages per violation, [so] the amendment actually changed § 637.2 and did not merely clarify it"). Thus, the court found

1  that "the pre-2017 statute does not provide per violation statutory damages."[5] *Franklin*,

2  2018 WL 5923450, at *7.

3      In the FAC, Brinkley seeks "damages under Cal. Penal Code § 637.2 for each

4  violation of Cal. Penal Code §§ 632 for Plaintiff and each member of the Class" and

5  "damages under Cal. Penal Code § 637.2, per each violation of Cal. Penal Code § 632.7(a),

6  for Plaintiff and each member of the Subclass." (ECF No. 97 at 26). Both calls at issue in

7  Brinkley's individual claims occurred before January 1, 2017. (Def.'s Facts, ECF No. 129-

8  2 ¶¶ 22, 33). The pre-2017 version of section 637.2 governs Brinkley's claim for damages.

9  *See Tapia v. Sup. Ct.*, 53 Cal. 3d 282, 287 (1991) ("[A] new statute is presumed to operate

10  prospectively absent an express declaration of retrospectivity or a clear indication that the

11  electorate, or the Legislature, intended otherwise."). In line with the decisions in this

12  district, and consistent with the pre-amendment decisions of the California state courts, this

13  Court finds that the 2017 amendment to section 637.2 clarified that damages are available

14  on a per-violation basis. As discussed in *Ronquillo-Griffin*, the plain language of the statute

15  is ambiguous. 2017 WL 2779329, at *6. The use of the phrase that a plaintiff may bring an

16  action for "*a* violation" (singular) for $5,000, supports a reading of the statute that the

17  $5,000 applies to each violation. *See Ribas*, 38 Cal. 3d at 365; *Coulter*, 28 Cal. App. 4th at

18  928; *Lieberman*, 110 Cal. App. 4th at 167. Moreover, the legislative history, when

19  considered in the light of the amendment as a whole, evidences that the legislature intended

20  to clarify the statute rather than change it. The reasoning in *Lal*, relied on by the court in

21  *Franklin*, that the legislature's statement that "this bill would provide that the monetary

22  damages be imposed per violation" shows the statute was changed, is unpersuasive. The

23  same language appears in the discussion of the "per-violation" amendment to section 632,

24  which the legislature explicitly stated was intended to "clarify." Cal. S. Rules Comm.

---

[5] The court clarified in a later order that the $5,000 per-action cap does not apply on a class-wide basis. *Franklin v. Ocwen Loan Servicing, LLC*, No. 18-cv-03333-SI, 2019 WL 452027, at *4 (N.D. Cal. Feb. 5, 2019). Section 637.2 allows a plaintiff to "seek a class-wide award of damages in an amount up to $5,000 per class member." *Id.*

Office of S. Floor Analyses, Third Reading Analysis of A.B. 1671 (Aug. 31, 2016); Cal. Bill Analysis, A.B. 1671 Sen. Comm. Pub. Safety, (June 28, 2016); Cal. Bill Analysis, A.B. 1671 Assem. Comm. Appropriations (May 4, 2016). The Court declines to read an identical phrase—"per violation"—in the same amendment, as being clarifying for one section and changing another section. Monterey is not entitled to summary judgment on the issue of statutory damages.

## VIII.   CONCLUSION

The Motion for Summary Judgment filed by Defendant Monterey Financial Services, LLC (ECF No. 129), is denied.

Dated:  January 17, 2020

Hon. William Q. Hayes
United States District Court

25